19-1151-19-1999 International Outdoor v. City of Troy. Arguments not to exceed 15 minutes beside Ms. DeNora. And I'm also going to ask everyone to keep their voices up. Good morning Your Honors. Adam Barrett on behalf of the Appellant International Outdoor and both of the Consolidated Appeals with me is Serena Robbie of my law firm. We've done three issues for the Court this morning. International Outdoor is an outdoor advertising company that posts both truthful commercial and non-commercial messages on signs throughout Michigan, primarily in southeastern Michigan. International Outdoor applied to erect signs in the City of Troy and was denied. International Outdoor filed an action alleging that the City of Troy's signed ordinance was both unconstitutional facially and as applied to it. Why is it unconstitutional to regulate the size of a sign? It is not unconstitutional to regulate the size of a sign. But isn't that all you're seeking? No sir, it is not. I mean you want a bigger sign, right? Reasonable time, place, manner restrictions are constitutional. Our arguments to the Court on both of our counts... But what is it you want? You really want just a bigger sign. We did want a sign that had different size and setback requirements and allowed under the sign ordinance, correct? However... That's all you wanted. However, correct, we did want to erect signs that had different sizes than allowed. So ultimately you're in the Federal Court saying we want a bigger sign. No, Your Honor. Do you think that's what James Madison had in mind when he put the First Amendment in? That the Federal Court should deal with this kind of situation? No, Your Honor, I don't think this is simply a variance case to the extent that we're seeking exception. Was there anything about your sign that led to its rejection other than the size? Not to my knowledge, Your Honor. Based upon what was disclosed to us in discovery and based upon what was discussed at the variance hearing. I think that's what Judge Sirhan is getting at. That there was nothing... You were not rejected because of content or category or anything like that. You would not have been able to post, to erect these signs even if you were giving directions or if you were a special event or if they were temporary. There was nothing about these billboards except for their size that put you in this position. Well, let me ask the Court, I would ask the Court to consider our complaint. And our complaint in this action identified that the signed Board of Appeals in place in the City of Troy had a track record over the last approximately 17 years of granting almost 190 variances. And for signs like our size of signs, larger signs throughout the city. Oh, so they were granting variances for billboards? Not for billboards per se, although there are billboards in the City of Troy. They were allowing other large commercial and non-commercial based signs. When you say other large commercial and non-commercial signs, you mean... For example, a sign on the side of a bank, of a large building that might have a, might say PNC Bank as an example. Other examples like that. And our allegation in the complaint was that Troy through its signed ordinance was trying to funnel into the signed Board of Appeals all applications so they could make a determination based upon content. That was... I don't think that's an allegation in your complaint, is it? It is. What... We, we, we, we briefed that extensively for the lower court. The point was that the signed Board of Appeals... No, you're talking about your complaint. Which, just tell me which paragraph of your complaint alleges that they, I could have missed it. I don't have a complaint with me. Okay, well... The point is that we said approximately 193 instances, I think that was the allegation, in which the City of Troy granted variances from its regulations. And our point was that Troy was using the variance process as a way to regulate content. And that's why we challenged... But, but, if you were aligned, you know, if you were here as a lawn sign person, you might have a better argument. It's almost like there's kind of two classes of people. If you're talking about equal protection, for example, you've got the class of the lawn, I just use that in a generic sense, the lawn signs, and then you've got the signs of the billboards. And they're two entirely different kinds of species, it seems to me. Well, Your Honor, I think Reid, I think Reid and this Court's recent opinion last month in Thomas suggested there should be no difference. The fact... Well, there should be no difference insofar as there should be no discrimination between the content of signs, not the content necessarily of a lawn sign and a billboard. Correct. However, the point here is that we believe that Troy was using its variance process to keep it vague. When we asked the 30B6 representative of Troy to identify what these standards meant, he had no idea what they meant, and that's clear in the transcript of his deposition. Well, that count, if I'm not mistaken, the judge permitted to proceed. That is correct, he did. Okay, and then you are not challenging the grant of summary judgment on damages, right? Correct. The judge found that since we did not comply with the sign ordinance, the fact that we could find, the fact that he concluded that the variance process was unconstitutional left us without a remedy because we didn't comply with the sign ordinance. That circular logic does not apply when dealing with a variance when the very nature of a variance is to ask for exception from the sign ordinance. And we directed the Court to a district court opinion in Nittany out of Pennsylvania that reached a similar conclusion. How could I ever apply with the sign ordinance's restrictions to the extent that I'm seeking for a variance? Our argument was to the Court, which it concluded was the case, we were subjected to an unconstitutional prior restraint, both facially and as applied to us. That should have entitled us to some remedy of damages, be them punitive, compensatory, or nominal. But what if, how can you possibly show that you were entitled to put the billboards up? Your Honor, I think in large part it's because of the high nature of variances that were being granted by this Board. But you're not arguing you were entitled to put them up, but your claim seems to be that you were entitled to be judged on a non-content-based standard. Is that correct? Correct. We were entitled to our fair day in front of the variance. And based upon their almost 90 percent grant rate, we thought that we could, we would prevail in there based upon... All of this argument, is this strictly for count one, the variance, which then the amended ordinance seemed to have fixed? Yes, sir. And so that's our point leading us into our third argument, which is the City survives, the City sees no more than twice, no less than twice from the Court that their variance process is unconstitutional and amends it in the middle of the case after I file a dispositive motion. And so in that instance, I believe we are a prevailing party. But my point on the variance is that it can't be the law that I have to show that I would have been entitled to a variance. The standard is I would have been entitled to a fair review of my application. And so that is what the District Court, I think, respectfully erred in determining. What about count two? How does the amended ordinance affect that, if your argument differ on count two? So obviously we were dismissed on count two and couldn't proceed. And to the extent that... You're appealing that dismissal. We are, we are. But post that dismissal, there was the amendment of that ordinance. So what that would leave us with is whether or not there was a damages component to that claim. And once again, the City of Troy made exceptions to signs based upon their content, allowing, you know, an international outdoors allegation in its complaint was ultimately that its signs show the various types of messages. A billboard is unique in its nature where it can show both commercial and non-commercial messages. On count two, the judge ruled that Reed didn't apply and Central Hudson did. Am I right on that? He did, sir. Yeah. And so the issue is what's the right standard to judge by? Did Reed, did Reed mean to apply to commercial as well as non-commercial? Right. And I think, and I think that's exactly correct. And I think Reed on its face, and I think the Court, again, needs to consider the recent opinion of Thomas. While Thomas was a decision dealing with a sign that said, Go USA, the point of Thomas was that that was a billboard and a changeable message. The Court invalidated Tennessee's Highway Control Act for the very same reasons that I think it would apply here. Reed changes. But with respect to count two, you'd have the same argument that at this point all you, all you could get is damages from what, the time of your application until the time of the new ordinance? Correct. And I think that was a question of fact for the trial court to determine after adjudicating liability. I'm still struggling with how would these damages be measured? Your Honor, I think the Plain Dealer case suggests that being subjected to a prior restraint is in itself an injury. And so, again, our 1983 case law suggests that there's such a thing as nominal and potentially punitive. Okay. So it would be nominal damages. But it could also be punitive or compensatory. Again, I think that was an issue. But wouldn't you claim that it'd be the revenue that you could have derived during that time period? We did allege that, Your Honor. I mean, that's what I would have thought. Yeah, we did allege that. And so, again, I think... Wouldn't you have to show then that... I don't know how you could show that you would have gotten the variance under a different standard. We base that, Your Honor, on the high propensity of which these variances were given. I would suggest to you as a question of fact that that's an anomaly for signed boards of appeals, that such a high propensity are granted. And again, Troy used this process as a funneling process. I mean, make no mistake, the fact that Troy... By that you mean that the ordinance itself was so severe, that is it limited to 100 square feet, that almost everybody needed a variance or a lot of people needed a variance. It was exactly what we alleged, Your Honor. There was no location for a sign, no location anywhere in Troy where I could physically put my sign, let alone put my sign to the size that I was seeking for. So the fact is, to Judge Streheinrich's point, if they would have allowed me to put up a sign, I would have needed a variance. If they would have allowed me to put up a sign that was visible because of Troy's unique topography, which I have alleged, I-75 is raised at this level. A sign to be visible by the freeway in the areas allowed commercial and industrial in Troy would have needed exception to the variance. Now, they might have said 13 feet versus 50 feet, or they might have said, well, allow a 10 by 30 versus 14 by 48. Those were all of the things that we said in the board of appeals. Instead, what we were subjected to was this funneling process. I see my time has elapsed. When you come back, I think at least three or four times you've said that's what we alleged, and I'd like you to tell me which paragraph of your complaint you alleged about not being able to see and all the things that you mentioned, okay? Thank you, Your Honor. Good morning, Your Honors. My name is Alan Motzni, and I represent the City of Troy. First, addressing some of the issues that Mr. Barrett discussed, the 190 variances that were granted. Troy is a big city with an I-75 running through it. A lot of people asked for variances. That's not an unusual number, but what Mr. Barrett failed to indicate, and we pointed this out to the lower court, those variances were minor variances. There were people asking for three feet here, 10 feet there. Plaintiff was asking for a 672 square foot billboard when the ordinance at that time only allowed 300. In fact, as we pointed out to the lower court, plaintiff actually conveniently left out some of the requests for billboards that were denied by the Board of Appeals because the three standards weren't met. Were there any billboards? There is one existing billboard that was a non-conforming structure from several years back. At the time plaintiff applied, there were no other billboards as that's defined an off-premise advertising sign of 672 square foot. With regard to the Thomas case, that case decided recently by this court specifically said the sign in that case, although it was a billboard, was a non-commercial sign. So the court, this circuit court of appeals applied the strict scrutiny because they determined that sign was non-commercial. Although if you read the opinion, I mean, it doesn't rest wholly on that, does it? That is, as in Reed itself, the signage at issue were in fact non-commercial, but the attack on those ordinances as being content-based did not rest on whether they were commercial or not. Right. This case, that court decided that a distinction between off and on-premise signs is a content-based restriction, which we don't necessarily agree with. And I know that there's a petition to review that determination. But Reed itself, I mean, the problem for me or for your side in both is that Reed is very strong about content-based. And it doesn't say anything about, oh, we're only doing this because it's non-commercial. And, of course, the whole question of the distinction between commercial and non-commercial is a little dicey, isn't it, after Discovery Network? Going back to the question regarding Reed, yes, Reed doesn't mention the distinction between non-commercial and commercial. But it's interesting that Reed doesn't mention the central Hudson case at all, which is the standard that's always been applied to commercial signs, whether it's content-based or content-neutral. I know the plaintiff relies on the Sorrell case as well as the Tam case and claims that those are instances where the court has applied strict scrutiny to commercial speech. But if you really look at the Sorrell case, it doesn't actually do that. The Sorrell opinion says, in this case, there's a, maybe we should do a heightened level of scrutiny because the actual regulation, the statute in that case, actually showed disagreement with the speaker. It was viewpoint discrimination. And the same thing in the Tam case that's cited by the plaintiff. The Lanham Act in question, the court indicated, this is actually, may have heightened level scrutiny because they're actually disagreeing with the speaker in this regulation. Does it matter that to the extent there are content-based judgments here, they're not related to, they're not commercial in nature? In other words, the billboards might have been commercial, might have been political. I mean, it doesn't, it's not based on that. Well, Judge Stee examined that in his opinion. He said that, yes, when there's some commercial and non-commercial, then you have to make a distinction whether or not you applied the commercial standard as he did. And what he did is he cited some case law saying that, making the determination whether it's commercial speech or non-commercial speech, you have to examine the whole of the situation. And in this situation- But I'm asking a different question. Okay, I'm sorry. I'm not asking, I'm assuming it is commercial speech or predominantly commercial speech, but I'm asking a different question. Okay. The distinction being drawn or the regulation itself is not of commercial speech. It's of all speech, all signed speech. The regulation applies to all signed speech. It's not based on the nature of commercial speech, right? Right. Because they could flip a switch, at least if it's an electronic billboard, and one day it says, buy at Walmart, and the next day it says, vote Buttigieg, right? Right. And that's why I think Judge Stee made the distinction with regard to the plaintiff in this case that they're predominantly commercial messages that their advertisers pay for, and that's why he determined that the commercial standard was applicable. Well, do you have, I don't think I'm making myself clear. Okay. This is a regulation that in this case is affecting commercial speech. Correct. It is not a regulation that regulates commercial speech. Do you understand what I'm saying? I believe so, Your Honor, yes. For example, in Thomas at the very end when this court cites other localities that have changed their ordinances, it mentions Texas having an ordinance of state law that instead of signage, it now regulates commercial speech. Court doesn't say it's good or bad, but at least that's an indication of what some places have done. I'm just sort of supporting that. Let me press you a little further, and maybe I'm excited about this, because I wrote the Wagner case that then the Supreme Court overturned after Reid, so I guess I'm sensitive to the If we were to remand and say, well, you shouldn't have judged it under Central Hudson, you should have judged it under Reid, presumably you would still have, in your view, a quite strong defense of your ordinance on the grounds that Judge Sir Heinrich has raised, that these signs are just way out of line no matter what's on them. Correct. So would there be anything, I mean, obviously you want to win right now, but would there be anything wrong with respect to at least count two saying you just used the wrong standard, go back, use the right standard, and judge it? We actually argued below that our regulations were not actually content-based. Judge Stee disagreed with us because our ordinance had regulations regarding temporary signs, and the temporary sign description used the words political sign, real estate sign, and there was also special event sign, and that's why Social flags Right, and we did argue that those really weren't content-based, the judge disagreed with us, but we could still make an argument that our ordinance would still survive strict scrutiny because our ordinance is to help with traffic safety concerns and aesthetics, which the Metro Media case said is a compelling governmental interest, and we would argue that our ordinance is nearly tailored. We would make that argument. So buy at Walmart is less aesthetic than vote Buttigieg? It could be, and I guess I haven't really answered your question, Judge White. But there was no, this sign, even if it had said that, would not have been allowed, right? Even if the bill, well maybe I don't understand Well, the temporary signs, which was the But the temporary signs also had size requirements, right? Yes, and they had duration requirements and size requirements Right, so if they wanted to put up the billboard with a political message, they still would not have been permitted to do it, right? Because it would have not complied with the size provisions, that's correct Right, even if it were temporary, it's just too big It's too big, yes And have you allowed political signs of that size through variances? Or has anybody erected a temporary sign of that size that was permitted? No, not in the city of Troy. The city has allowed political temporary signs under the temporary sign provisions And how large have they been? Small, little signs, just the ones with the metal posts that you stick in the ground and then remove, because those are not permanent, they're temporary, so it's less of an issue with regard to traffic Counsel, help me on this, because you may be right, but I'm looking at the decision below at pages 8 to 11 or so, which discusses, quotes the ordinance for temporary signs and flags and so forth, and I didn't see a size limitation there, I thought they were accepted completely. Is there another section that perhaps the judge should have cited there that he didn't? What should I look at for these parts that are, quote, again this is all under the original ordinance, but as I read it, they are simply accepted from the ordinance. So did I miss some other part? Yeah, there's a part of the ordinance, and I don't know where I placed it at the moment, that has size restrictions with regard to temporary signs. Even for temporary signs, even for flags? Yeah, there is a size limitation on flags and a limitation on the number of flags. But if I want to read that, I'll just need to find the ordinance. I'm sorry. Okay, that's fine. I have it somewhere in my briefcase, but with three minutes left, I'm not sure if I can find it. If it's there, I'll find it. Thank you. And for purposes of this appeal, you are not arguing that it wasn't content-based, right? For purposes of this appeal, our argument is that assuming it was content-based, Judge Steve correctly severed the prior restraint provision and determined that the plaintiff has no damages, because if the variance provision is severed, we still have the height and size regulations that plaintiff cannot meet. We believe that the judge correctly determined that severability was a matter of state law, and based on the severability clause of Troy's ordinance, the court properly determined that the plaintiff had no damages, because without the severability clause, plaintiff's sign still can't be built. But we also, it is also our argument that Judge Stee technically made the wrong call, because we contend our variance process is not a non-lawful prior restraint. To get a variance in Troy, the applicant has to demonstrate three criteria to the Board of Appeals. It's our contention that because there are standards and criteria, there was no unbridled discretion and therefore there was no prior restraint. I know that counsel is arguing that we can't make that argument because we didn't file cross appeal, but the Supreme Court case that the plaintiff cited actually says the opposite. It indicates an appellee can argue against the judge's reasoning as long as it was argued on the record below, and we made this argument below. If we accept your argument in support of Judge Stee on the severability point with respect to count one, would the same argument save you on count two if you were to follow my earlier hypothetical that we say no read applies? In the lower court on our 12B6 motion, we did argue that the temporary sign provisions were severable as well. The judge did reject that. I have to admit we did not raise that in this current appeal, but we made that argument. But again, if you followed my hypothetical of remanding, you could raise it again below saying that you succeeded in count one, now we should succeed on count two. The temporary sign provisions could be severable based on the intent of the City Council in adopting the severability clause. We don't have to decide that, but your side would say that's open to you? Yes, if it was remanded. I'd have to ask them the same question. As far as attorney fees, quite simply, the plaintiff was not a prevailing party based on any case law cited by either party, and the judge correctly denied the request for attorney fees by finding that the plaintiff was not a prevailing party. I guess I'm done unless the court has any questions for me. Thank you very much. I apologize, Judge White, for looking at myself. I did not bring the complaint with me, but I had it emailed to me while we were talking. Paragraph 37 of our complaint says that Troy has granted numerous specific variance applications without applying any objective criteria under Chapter 35, and does not require specific variances for other signs in Troy that exceed the various restrictions on their sign code. Our point being there is we then briefed, having taken discovery, we then submitted when our cross motions for summary judgment, we did then present evidence to the court on that fact. That was unrefuted by the City of Troy. They say now, well, it's small signs, little signs. They didn't say anything about signs. They kept on their arguments here. So to the extent that that's a question of fact, then that further supports remand. I'd like to use my remaining time or a portion of my time to talk about severability here. Severability is a remedy. I can find no case in which we talk about repealing, excuse me, severing a repealed ordinance. I'm effectively, in light of the fact that we made an as-applied and facial challenge and the city, albeit two years into the case, responded to it. I'm without a remedy in this case. We successfully, the district court identified the problems in their ordinance twice. They reacted to it and then found that because of severability, I'm entitled to no remedy. And so I think that's what makes our argument different than the Buchanan or Buchanan case, which is we're faced with a facial challenge and to the extent that Judge Rehnquist in writing that opinion suggested that it is a rare element when the party would find no recovery through mootness. Here we have no recovery through mootness. The fact that the city of Troy saw the writing on the wall through two opinions and then finally took action suggests that I was a prevailing party. Now I agree that that's not my strongest argument that I have, but ultimately I think I need to appeal it so that there's no law of the case on the issue of attorney's fields to the extent I am successful and it's remanded. But number two, what else could I have done in this instance? If any municipality can dip their toe in the water and find out whether or not facially their ordinance is or is not unconstitutional and then retreat or go forward based upon the court's initial take, then we'll never have an instance where facial challenges like this can succeed. I can find no case that supports an opposite view of that. The idea of 1983 is to vindicate these types of claims. So I respectfully submit that we were entitled to some remedy here for that, be it punitive compensatory or nominal or in addition to attorney's fees. The question I ask your adversary, do you dispute that someplace else in the ordinance there are limits on even the accepted signs, temporary flags, all those sort of things, that there are size limits that would have prevented your application? Because they didn't have to make an application. Right. I think this case is no different than Reed. Reed talks about 23 different categories of signs and Judge Thomas only focuses on three of them. But it's the same types of things. Temporary signs could be X. The banners could be Y. Now, I don't have prudential standing to challenge all of those. However, I do have standing to bring it to the court's attention that the entire permitting standard was content-based, whether I did or didn't need a permit. My very signs, in some instances, based upon the message, may have been permit-free, meaning I would not have had the limitations of the signed ordinance. Wait. You're saying based upon, I don't understand what you just said. You're saying that if you had had different message, then you wouldn't have had to apply? Correct. The City of Troy's permitting process depended upon the content of the speech as to whether or not you needed to apply for a permit. So if your big sign, however big, was, quote, temporary, you said you wouldn't have to have applied? I might not have reached the... They still regulated the size of temporary signs, but they were much more liberal and they were much more allowing, for example, size setbacks and the like. So that's the distinction I'm trying to make, which is, as a billboard and changing of messages, I can put up different types of signs all the time. One of you said it's a flip of a switch if it was electronic, and that's exactly right. My permitting scheme, my setback, my size, and the like, while never as large as what I was seeking, and I'll concede that, never as large as I was seeking, I would have had different standards to which to apply, and some of those standards may have been acceptable to me, and that's the give and take of a variance process that, when you entrust citizens with that decision, could have been reached. And so, I mean, the thing about the different types of messages, okay, they said your sign is way too big, and you say, okay, I'll make it smaller, and they say, okay, but then you can only display certain kinds of signs and not other kinds of signs. That's how that would... That's what ultimately I think that standard would have created, correct. Because you might have accepted a smaller size. Right. And I know I'm out of time, but that's the nature of a variance. It's the give and take with the body. Thank you very much. Thank you. This can be submitted.